**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 95-5126

MARVIN JUNIOR KING,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 95-5127

DORIAN EDQUADO CARTER,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Fayetteville.
Terrence W. Boyle, Chief District Judge.
(CR-94-21)

Submitted: October 31, 1997

Decided: January 15, 1998

Before WILKINS and NIEMEYER, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Farris A. Duncan, LANGSTON & DUNCAN, Goldsboro, North Carolina; Scott F. Wyatt, CHESHIRE, PARKER & MANNING, Raleigh, North Carolina, for Appellants. Janice McKenzie Cole, United States Attorney, Anthony S. Senft, Jr., Special Assistant United States Attorney, Fort Bragg, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Marvin Junior King and Dorian Edquado Carter were convicted by a jury of robbery at Fort Bragg, North Carolina, within the special maritime and territorial jurisdiction of the United States, 18 U.S.C.A. § 2111 (West Supp. 1997), and aiding and abetting, 18 U.S.C. § 2 (1994). King was sentenced to a term of 87 months imprisonment. Carter received a sentence of 72 months imprisonment. King and Carter appeal their convictions, asserting that federal jurisdiction was not proved, that the victim's out-of-court identification should have been excluded as the fruit of an illegal arrest, and that the evidence was insufficient to support their convictions. They also challenge the use of a five-level sentence enhancement which applies if a firearm was brandished, displayed, or possessed during the offense. See U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(b)(2)(C) (1994).[1] Appellants also have requested leave to file pro se supplemental briefs raising additional issues. After consideration of all the issues, we grant the motion for leave to file supplemental briefs but affirm the convictions and sentences.

_____

[1] King and Carter were sentenced in November 1994 and January 1995, respectively.

2

## I.

On his way home from a club in the early hours of February 19, 1994, Army Staff Sergeant Marlon Greaves stopped for a traffic light at an intersection on Fort Bragg. The car behind him bumped his car, breaking his tail light. When Greaves pulled over and got out to inspect the damage, he was approached by three men from the other car, one of whom took a gun from his pocket and pointed it at Greaves. The man with the gun then took a gold chain, a ring, and $20 from Greaves while the other two men ransacked Greaves' car, taking audio tapes and cassette disks, a radar detector, and an air freshener. When Greaves was slow in taking off his ring, he was jabbed in the shoulder with the gun. Greaves reported the incident to the military police and described the robbers' car as a red Chevrolet Lumina with a spoiler. The next night, two agents of the Army Criminal Investigation Division (CID) saw a car matching Greaves' description in Fayetteville, North Carolina, which is adjacent to Fort Bragg. They stopped the car and summoned the Fayetteville police. The two occupants of the car were arrested and photographed at the police station. That night, Greaves viewed a photographic line-up and identified Carter as the man who held the gun on him and King as one of the accomplices.[2]

King and Carter were charged with robbery, use of a firearm in a crime of violence, 18 U.S.C.A. § 924(c) (West Supp. 1997), and aiding and abetting. At their first trial, the jury acquitted them of the § 924(c) charge but could not reach a verdict on the robbery charge. At their second trial, King and Carter were convicted of the robbery.

## II.

King and Carter first allege that their convictions should be reversed because the government failed to prove that the robbery occurred in an area under federal jurisdiction. The indictment charged that the defendants committed a robbery at Fort Bragg, North Carolina, within the special maritime and territorial jurisdiction of the United States. The government introduced evidence at trial which

_____

[2] The third man was not identified or prosecuted.

established that the robbery took place at Fort Bragg but produced no evidence that Fort Bragg was on federal land. We find no error. The district courts have jurisdiction over offenses committed on military bases. See 18 U.S.C. §§ 7(3), 3231 (1994); United States v. MacDonald, 531 F.2d 196, 198 n.1 (4th Cir. 1976). A district court may take judicial notice that the crime being prosecuted occurred within federal jurisdiction. See United States v. Lavender, 602 F.2d 639, 641 (4th Cir. 1979); United States v. Blunt , 558 F.2d 1245, 1247 (6th Cir. 1977). Here, the district court implicitly took judicial notice that Fort Bragg is within the territorial jurisdiction of the United States by instructing the jury that, to convict, they must find "that the robbery occurred within the territorial jurisdiction of the United States, that is, on Ft. Bragg military base."

Next, King and Carter contend that the out-of-court identification should have been suppressed as the fruit of an illegal arrest. They argue that the CID agents were without authority to stop their car in Fayetteville, off the military base. Because this issue was not raised at trial, our review is for plain error only. See United States v. Olano, 507 U.S. 725 (1993). Plain error requires an error that is clear or obvious, that affects substantial rights, i.e., is prejudicial to the defendant, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. at 732. As a general rule, military personnel are prohibited from direct participation in civilian law enforcement activity. See 10 U.S.C. § 375 (1994); United States v. Kahn, 35 F.3d 426, 431 (9th Cir. 1994). However, even if a Fourth Amendment violation occurred because the CID agents lacked authority to make a traffic stop off the military base, and even if suppression of the out-of-court identification would have been the proper remedy,[3] it is not

_____

[3] It is not certain that suppression of Greaves' out-of-court identification of King and Carter would have been necessary, given the prompt arrival of the Fayetteville police and the apparent probable cause to arrest. Evidence that would not have been discovered but for official misconduct may be admitted if the causal connection between the illegal conduct and the acquisition of the evidence is so attenuated to purge the evidence of the primary taint. See Brown v. Illinois, 422 U.S. 590 (1975) (test includes time between illegality and acquisition of evidence, presence of intervening circumstances, and purpose and flagrancy of official misconduct).

4

plain that King and Carter were prejudiced by its admission because Greaves also identified King and Carter in the courtroom. To the extent that their argument is intended to encompass Greaves' in-court identification, we also find no plain error. A witness' in-court identification of a defendant subsequent to a photographic lineup obtained pursuant to an illegal arrest may be admissible, provided that neither the witness' presence to testify, his knowledge of and ability to reconstruct the criminal incident and identify the defendant, nor his ability to observe the defendant in the courtroom, resulted from exploitation of the Fourth Amendment violation. See United States v. Crews, 445 U.S. 463, 471 (1980). In this case, we cannot say that any of the factors necessary for exclusion of the in-court identification were plainly present.

The remaining issues do not warrant extended discussion. We find that the evidence was sufficient for a reasonable jury to conclude that something "of value" was taken from Greaves. See 18 U.S.C.A. § 2111. During Carter's sentencing, based on the trial testimony, the district court found as a fact that Carter carried a firearm during the robbery, rather than a weapon which merely appeared to be a firearm. In the absence of any evidence to the contrary, a five-level enhancement for both defendants under USSG § 2B3.1(b)(2)(C) was not clearly erroneous.

At sentencing, King and Carter each filed an affidavit alleging errors and lack of cooperation on the part of their attorneys and asserting that they could produce new evidence (pictures of skid marks and accident debris) to prove that the collision with Greaves' car did not take place on Fort Bragg. The district court treated the affidavits as new trial motions and subsequently denied the motions, finding that the motions were untimely except for the claims of new evidence and that no new evidence had in fact been produced. We review the district court's decision for abuse of discretion. See United States v. Campbell, 977 F.2d 854, 860 (4th Cir. 1992). A new trial may be granted on the basis of newly discovered evidence if new evidence has come to light which was not previously known to the defendant despite due diligence on his part. See United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993), aff'd, 511 U.S. 485 (1994). The evidence must be material, not merely cumulative or impeaching, and of such a quality that a new trial would probably result in an acquittal. Id. The

5

district court did not abuse its discretion in finding that King and Carter failed to meet this test. The new evidence they had allegedly just discovered could have been produced earlier than three months after their second trial and would have merely impeached Greaves' testimony and the testimony of the CID agent who confirmed that the intersection where Greaves was hit and robbed was on Fort Bragg.

The additional issues raised by King and Carter in two pro se supplemental briefs are also without merit. Although King and Carter were acquitted of the § 924(c) count in the first trial, the court could consider the evidence that a firearm was displayed during the robbery as relevant conduct for sentencing purposes without violating double jeopardy. See USSG § 1B1.3(a)(1); United States v. Romulus, 949 F.2d 713, 716-17 (4th Cir. 1991). There is no Sixth Amendment right to have the defendant's counsel present at a photographic identification. See Moore v. Illinois, 434 U.S. 220, 226-27 & n.3 (1977). King and Carter allege that blacks were systematically excluded from the jury venire for their second trial when the trial judge scheduled the trial in a different county with a lower black population. However, the federal rules provide that a defendant may be tried at any place within the district where the offense was committed. See Fed. R. Crim. P. 18. Moreover, King and Carter waived the issue by failing to raise it in a timely manner at trial. See United States v. Webster, 639 F.2d 174, 180 (4th Cir. 1981). Finally, the district court did not err in failing to hold an evidentiary hearing on their claims of ineffective assistance because such claims are better decided on collateral review unless the record conclusively demonstrates that the defendant's counsel did not provide effective assistance. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

We therefore affirm the convictions and sentences. The motion for leave to file supplemental briefs is granted. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED