UNITED STATES, Appellee,

v.

Sergeant Edward E. SIMMONS, United States Army, Appellant.

266–23–5032.

U.S. Army Court of Military Review.

19 Nov. 1991.

For Appellant: Captain Michael P. Moran, JAGC, Captain Timothy P. Riley, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Thomas E. Booth, JAGC, Major Daniel N. Velling, JAGC (on brief).

Before De GIULIO, HAESSIG and ARKOW, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a general court-martial consisting of officers. Contrary to his pleas, he was found guilty of four specifications of failure to obey a lawful order of a superior commissioned officer by having a prohibited relationship with trainees, rape of a trainee, indecent assault of a trainee, and false swearing in violation of Articles 92, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, and 934 (1982) [hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for ten years, forfeiture of $700.00 pay per month for ten years, and reduction to Private E1. The convening authority reduced the confinement to six years and the forfeitures to $500.00 pay per month for six years, but otherwise approved the sentence.

Appellant alleges that his due process rights were violated because the government failed to disclose the existence of a statement by one of the victims which was favorable to him and constituted material impeachment evidence. Appellant also alleges that the evidence is insufficient as to the false swearing charge because no evidence was presented showing that appellant was administered an oath by a person authorized to do so. We disagree and, with minor corrections to the sentence, affirm.

This case arose from sexual advances by a drill sergeant toward trainees. The facts pertinent to the first asserted error follow. Two female trainees, Privates B and E, testified that they went to appellant's apartment. While the trainees were drunk and "passed out," appellant and his friend had sex with them without their consent. Appellant and his friend testified at trial and admitted the trainees were at the apartment but denied having sex with

them. The court found appellant guilty of rape of Private (PVT) B and indecent assault of PVT E. Before trial, defense counsel made a request for "any and all information in the government's possession or in the possession of government agents, informants, or police officials that may be favorable to the defense within the meaning of *Brady v. Maryland.*" This request was one item in the general request commonly submitted by members of the Trial Defense Service *pro forma.*[1] Trial counsel's response to the request was, "no known information." Trial counsel offered to make available for review and inspection all information he had in his custody or control.[2] No issue concerning this matter was raised at trial.

Privates B and E had been administered polygraphs prior to the Article 32 investigation. The results were unfavorable to them. In a later statement to the polygrapher, PVT B had said that she did not feel she was a victim of rape as she enjoyed sex with appellant and she felt she could have done something to prevent their actions "if she would have wanted to." At the Article 32 investigation, Privates B and E admitted that their polygraphs showed deception. Trial defense counsel conceded that trial counsel did not know of the subsequent statement until after trial. Subsequent to trial, however, in submissions pursuant to Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1105 [hereinafter R.C.M.], trial defense counsel raised this issue. The issue is now before this Court. Appellant alleges trial counsel erred by not providing copies of the polygraphs and PVT B's statement.

■ In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that failure to disclose material evidence violates due process guarantees and may require setting aside the conviction and sentence. Impeachment evidence falls within the *Brady* rule. *Giglio v. United States,* 405 U.S. 150, 154, 92

S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). The key is to determine if the evidence is material. In determining materiality, the standard depends upon the facts. Chief Judge Everett summarized the variable standards in *United States v. Hart,* 29 M.J. 407, 409 (C.M.A.1990) stating,

> In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court distinguished between three situations. If the Government has reason to know that the witness has perjured himself and does not disclose this fact, the conviction 'must be set aside if there is any reasonable likelihood that the' perjured evidence 'could have affected the' outcome. 427 U.S. at 103, 96 S.Ct. at 2397. If the defense has requested specific items of evidence which are not provided, the test is whether this 'evidence might have affected the outcome of the trial.' *Id.* at 104, 96 S.Ct. at 398. Finally, if there is only a general request for discovery or no request at all, the court must determine whether there is 'a reasonable doubt'—in view 'of the entire record,' including the suppressed evidence—that the accused would have been convicted had the evidence been disclosed. *Id.* at 112–13, 96 S.Ct. at 2401–02.

■ In the case before us, appellant and his counsel knew at the Article 32 investigation that the victims had taken polygraphs which were favorable to him. Even with this knowledge, he chose to submit a general request for discovery. Further, trial counsel did not know of the subsequent statement to the polygrapher. Consequently, we conclude that the standard to be applied is the last standard summarized from *Agurs* by Chief Judge Everett; i.e., "whether there is a 'reasonable doubt'—in view 'of the entire record,' including the suppressed evidence—that the accused would have been convicted had the evidence been disclosed."

---

1. This blanket discovery request is generally computer programmed and produced at the "push of a button." It is submitted without regard to the specific facts of the case at hand.

2. In addition to this response, trial counsel provided the defense counsel other information in a detailed response to the defense request.

■ We believe the actual polygraphs of the victims would have been of little value to the defense since the results were made known to the defense at the Article 32 investigation. We interpret PVT B's post-polygraph statements not as a denial of being raped, but as the victim's explanation concerning why the polygraph may have showed deception. Further, since the polygraphs were known to the defense, and the defense counsel indicated he did not seek to delve into the details of the polygraph until after trial, we conclude he did not exercise due diligence to discover the statements.[3] It has been held that *Brady* does not require disclosure of evidence that could be discovered with due diligence. *Jarrell v. Balkcom*, 735 F.2d 1242, 1258 (11th Cir. 1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985). Viewing the entire record, including the suppressed evidence, we are convinced that there is no reasonable doubt that appellant would have been convicted had the evidence been disclosed.

■ Appellant also asserts that the evidence is insufficient to support the finding of guilty to false swearing because of a failure to show appellant was administered an oath by a person authorized to do so. The record of trial reflects that appellant's statement, handwritten by appellant and the investigating officer on Dep't of Army Form 2823, Sworn Statement (July 1972), was admitted into evidence. The affidavit portion of the statement, Prosecution Exhibit 5, contains a printed declaration of the truth of the preceding statement, and appellant's signature. Following this signature are the words: "Subscribed and sworn before me, a person authorized by law to administer oaths ...," with the signature of First Lieutenant (1LT) P on the line

marked "Signature of Person Administering Oath" and his "Authority To Administer Oaths" is listed as "Investigating Officer." The officer who took the statement, 1LT P, testified that he did so in his capacity as an investigating officer under the provisions of Army Reg. 15–6 Boards, Commissions, and Committees: Procedures for Investigating Officers and Boards of Officers (1 May 1988) [hereinafter AR 15–6]. Although the military judge did not take judicial notice of AR 15–6,[4] he instructed the court that as a matter of law, an investigating officer is authorized to administer an oath, pursuant to his duties as an investigating officer. Article 136, UCMJ, 10 U.S.C. § 936, read in conjunction with AR 15–6, gives an investigating officer authority to administer the oath.[5]

Even assuming that the military judge erred in instructing the members, Prosecution Exhibit 5 sets forth evidence that the officer was authorized to administer oaths and that the statement was subscribed and sworn by appellant before that officer. Testing for legal sufficiency, we hold that a reasonable fact finder, viewing the evidence in a light most favorable to the government, could have found all the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Testing for factual sufficiency, after weighing the evidence in the record and making allowances for not having personally observed the witnesses, this Court is convinced of appellant's guilt of false swearing beyond a reasonable doubt. *See* UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

The assertions of error, to include those raised personally by appellant pursuant to

---

3. This does not raise the spectre of inadequate representation as his action is consistent with his tactics at trial, i.e., to show that sexual intercourse never took place.

4. Under the provisions of AR 15–6, para. 3–1b, provides, in pertinent part, "An investigating officer ... is authorized to administer oaths in the performance of such duties. (See UCMJ, art. 136)." This Court admitted AR 15–6 as an appellate exhibit. *See United States v. Brown*, 18 M.J. 360, 361 (C.M.A.1984).

5. Article 136(a)(6), UCMJ, provides that, in addition to commanders, adjutants and judge advocates, "all other persons designated by regulations of the armed forces or by statute" have the authority to "administer oaths for the purposes of military administration, ·including military justice...." Further, Article 136(b)(4), UCMJ, authorizes "all persons detailed to conduct an investigation" to "administer oaths necessary in the performance of their duties...."

*United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), are without merit. We note, however, that appellant's sentence to forfeitures states the time forfeitures will last in years rather than months. *See* R.C.M. 1003(b)(2); *United States v. Perry,* 24 M.J. 557 (A.C.M.R.1987). We shall correct this error.

The findings of guilty are affirmed. Correcting the sentence as noted, only so much of the sentence is affirmed as provides for dishonorable discharge, confinement for six years, forfeiture of $500.00 pay per month for seventy-two months, and reduction to Private E1.

Judge HAESSIG and Judge ARKOW concur.